## FORD MOTOR COMPANY v SMITH

Ohio Appeals, 2nd Dist, Franklin Co

No 2320. Decided Nov 17, 1933

David T. Keating, Columbus, for plaintiff in error.

Jones & Henderson, Columbus, for defendant in error.

## OPINION

By HORNBECK, PJ.

Counsel for plaintiff in error in this court urges two major grounds of error: (1) That there is no showing that McElroy, the agent of plaintiff in error company, was negligent and that such negligence proximately caused damage to defendant in error. (2) That as a matter of law defendant in error is chargeable with contributory negligence.

There is a deadly parallel between the claims of the respective parties. Smith asserts that as he approached State Route 161 he was driving some 30 to 35 miles an hour; that as he approached the intersection he slowed down to 20 miles per hour as soon as he was able to get a good view of State Route 161 looking to the west; that he looked and saw nothing; that he also looked to the east and saw no traffic; that he moved forward, proceeded across, taking in the view, of the intersection in general as he did so but that he saw nothing; that he entered the intersection at a rate of speed between 15 and 20 miles per hour; that as he proceeded across Route 161 and after he had gotten beyond the center of the intersection he was suddenly struck by the Ford which was driven by McElroy.

McElroy, likewise, states that he was driving at a moderate rate of speed on Route 161, namely, about 35 or 40 miles per hour; that as he entered the intersection he slackened his speed and when about 55 or 60 feet back from the intersection, looked north on the Sunbury Road where he could see from 250 to 300 feet; that he saw no car; that he proceeded on to the intersection, looking toward the south. He turned again and looked to the north. Just as he was about to move into the intersection, possibly 15 or 20 feet back, he observed the Smith car coming from his left at a terrific rate of speed estimated by him to be not less than 50 or 60 miles per hour. McElroy is the only witness who specifically testifies to Mr. Smith's car moving at an excessive rate of speed, although some of the physical facts will support the theory of defendant in error that the Essex was moving at a very fast rate of speed as it came into the intersection.

There are two other witnesses, Grover Mann and Arthur Gillespie, who testified on behalf of the plaintiff below respecting the speed at which the cars were moving. Mr. Gillespie was working in a field alongside Route 161, 300 feet from the intersection and saw the Ford pass at a rate of speed which he estimates at 60 miles per hour. Mann was driving a truck southerly on the Sunbury Road on the day of the collision and he says that Mr. Smith passed him moving in the same direction. Mann estimates his speed when Smith passed him at 30 to 35 miles per hour. He saw the collision and we believe a fair interpretation of his testimony indicates that the Ford ran into the Essex. He is uncertain whether or not Mr. Smith slackened his speed as he approached the intersection. There are positive statements in his testimony to the effect that Smith did not slacken his speed. There are likewise definite statements to the effect that he could not see whether or not Smith slackened his speed.

He testifies to skid marks which were found in the road which tended to support the theory of defendant in error that McElroy had skidded a considerable distance on Route 161 before coming into the intersection; that he ran into the side of the Smith car and carried it sidewise to the east. Considerable objection is made by counsel for plaintiff in error to the admission of the testimony of this witness and others respecting the skid marks and the implications which the jury was permitted to draw therefrom. We are satisfied that these marks were so closely connected with the accident as to be competent as pertinent circumstances related to the collision.

The physical facts attending the coming to rest of the automobiles indicate that they came into collision with great momentum. The Essex left the pike, jumped a ditch alongside the road, landed in an adjoining field some 80 or 90 feet from the point of collision; Mr. Smith was thrown out the window and freed from the car and slid on the ground on his face several feet. The McElroy car stopped across the Sunbury Road, its front part remaining suspended on a post four feet high.

Counsel for plaintiff in error takes as a premise that the undisputed evidence shows that McElroy entered the intersection at a rate of speed around 40 miles per hour and that it was a lawful rate of speed and as he had the right of way over Smith he could not be chargeable with negligence. The fault in this argument is found in the assumption that McElroy had a right to enter this intersection at a rate of speed of 40 miles per hour. No statute accords him such privilege and §12603, GC, makes it an offense to drive at a rate of speed greater than is reasonable and proper, taking into consideration the physical conditions on and about the road upon which the motorist is driving. Then, too the statement of Gillespie respecting the speed of the Smith car, some 300 feet away from the intersection, together with the marks on the Essex, indicate that the Smith car ran headlong into it. The skid marks on the road and the power which was necessary to catapult the Essex to the place where it eventually landed, all tended to support the theory of the plaintiff that the Ford was moving at an excessive rate of speed as it entered the intersection.

We have no difficulty whatever in supporting the verdict of the jury that the defendant was chargeable with negligence, proximately contributing to the collision.

Our difficulty is in reconciling the verdict and judgment upon the facts in this case in their most favorable light to the defendant in error. It is urged with much force by counsel for defendant in error that there was a dip in Route 161 which prevented Smith seeing the McElroy car as it approached the intersection. The record discloses that at the intersection the road is level. There is, then, an incline to the west and one witness, Mrs. McDaniel, says the dip is deep enough so that when a car is down in it you don't see a car from the corner. Mr. Smith testifies definitely respecting the grade. This is his language at page 103:

"Q. Approximately. Now, what is the grade of Sunbury Road as you proceed south about the intersection, is it level or hilly or——— A. It is practically level.

"Q. In other words, proceeding south across the intersection, practically level? A. Yes, sir.

"Q. What is the grade of Route 161 as you come from the west and approach the intersection? A. Down grade.

"Q. You mean in going from the west to the east you go down grade to go on 161? A. Yes, sir.

"Q. What is the pitch or grade from a point between center line of Sunbury Road and a point say a hundred feet west of the center line of Sunbury Road? A. My observation was made from a point about three hundred feet west, which would be the crest, and I would judge that there is about a four foot drop in that distance.

"Q. After you go beyond the three hundred feet, what is the level or grade of 161 as you proceed farther west? A. There is a considerable depression there.

"Q. How much is it, will you say? A. Well, I wouldn't hardly know. I know that a machine cannot be observed 400 feet west of the crossing there, a machine cannot be observed.

"Q. From what point? A. From the center of the intersection.

"Q. Why can't it be observed. A. Because it is out of sight in that depression."

The testimony of Smith at pages 117 and 118, in our judgment cannot be reconciled with his freedom from contributory negligence.

CROSS EXAMINATION BY
MR. KEATING, P. 117.

"Q. You didn't see that car on Route 161 when you were even with the stop sign, did you? A. No, sir.

. "Q. How far back of the north edge of Route 161 is the stop sign? A. About 25 feet.

"Q. When you were even with the stop sign, you didn't see that car on Route 161, did you? A. No, sir.

"Q. When you traversed that 25 feet and got even with the north edge of Route 161, you didn't see Mr. McElroy's car on Route 161 coming east into Sunbury Road, did you? A. No, sir.

"Q. You never saw that car at any time, did you? A. No, sir.

"Q. You didn't even see it when you hit it, did you? A. No, sir.

"Q. Now, when you were even with the stop sign there, 25 feet back, how far up west on Route 161 could you see if you looked, how many feet? A. If I had looked?

"Q. How many feet could you see? A. 300 feet.

"Q. 300 feet when you were even with the stop sign 25 feet back. All right, could you still see 300 feet up the road during the time you traveled the 25 feet from the stop sign on the north edge of Route 161? A. Yes, sir, you could have seen 300.

"Q. When you are even with the north edge of Route 161, how many feet up the road could you see? A. 300 feet.

"Q. From the time you passed the stop sign and entered the intersection of Route 161, did you make any attempt to check or stop your car? A. I had did that before I reached—

"Q. I am asking you the question, from the time you left the stop sign before you entered the intersection, at no time before contact did you make any attempt to stop your car? A. No, sir.

"Q. Did you make any attempt to veer to the left? A. No, sir.

"Q. You proceeded from that stop sign right on without any change in speed, without any checking or turning until the time of the contact, didn't you? A. Yes, sir.

"Q. But you don't know where you were in the intersection when the contact occurred, do you? A. No, sir, not exactly.

"Q. You didn't know there was any car anywheres around you, did you, Mr. Smith? A. No, sir.

"Q. You don't know how this accident happened, do you, Mr. Smith? A. No, sir."

At no place in the record does it appear that Mr. Smith could not see a car approaching the intersection on Route 161 from the west to the east at any distance from a point 300 feet away to the intersec-

tion. Upon any construction to be placed upon the testimony, it appears that the Ford car must have been within the range of vision of Smith if he had looked at any seasonable time as he approached the intersection. He says that he did so and did not see the McElroy car but there is no rate of speed consistent with the evidence at which Smith could have been moving and McElroy moving which would put the McElroy car out of the range of vision of Smith as he approached the intersection and had reached a place where he had an uninterrupted view of Route 161.

The dip in Route 161 is at a place beyond 300 feet to the west of the intersection.

Upon a careful reading of this record we are convinced that reasonable minds cannot properly differ in concluding that both Smith and McElroy were negligent and that the negligence of both was the cause of the collision. The exercise of due care on the part of either would, in all probability, have prevented the collision. We do not base our determination on the application of the statute, but upon the application of the rule of ordinary care as applied to the facts in this case. Railway Co. v Elliott, 28 Oh St, 340.

It is seldom that we are called upon to say that in no view of the facts in the case could the verdict of the jury be supported. If we had a rule of comparative negligence in Ohio, we could sustain this judgment but it is the law that contributory negligence will prevent recovery and upon this record we are satisfied that Smith was chargeable with contributory negligence, which must preclude his recovery.

The judgment of the trial court will be reversed and final judgment entered for plaintiff in error.

KUNKLE and BARNES, JJ, concur.